947 P.2d 360

STATE of Hawai'i, Plaintiff–Appellant,

v.

Hau Van HOANG, Defendant–Appellee.

No. 19394.

Supreme Court of Hawai'i.

Oct. 28, 1997.

Moana M. Lutey Ramaya, Deputy Pros. Atty., on the briefs, for plaintiff–appellant.

Theodore Y.H. Chinn, Deputy Public Defender, on the briefs, for defendant–appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The plaintiff-appellant State of Hawai‘i (the prosecution) appeals the judgment of the District Court of the Second Circuit, Lahaina Division, filed on November 8, 1995 and entered pursuant to the district court's order granting the defendant-appellee Hau Van Hoang's amended motion to dismiss Count I of the indictment—which charged him with promoting a detrimental drug in the second degree—with prejudice.

The prosecution's appeal poses the following two questions: (1) where the parties stipulate—and it is therefore undisputed—that a defendant's alleged "distribution" of marijuana has taken place by way of a "sale" to a third party, does the statutory scheme set forth in Hawai‘i Revised Statutes (HRS) §§ 712–1247(1)(h) (1993) [1] [hereinafter sometimes referred to as "the felony offense"] and 712–1248(1)(d) (1993) [2] [hereinafter sometimes referred to as "the misdemeanor offense"] violate the rule enunciated in *State v. Modica,* 58 Haw. 249, 567 P.2d 420 (1977); and, if so, (2) can a defendant who is charged with violating the misdemeanor offense, *see supra* note 2, rather than the felony offense, *see supra* note 1, successfully claim a denial of his or her rights to due process and the equal protection of the laws, thereby benefitting from the "*Modica* rule"? We answer the first question in the affirmative and the second in the negative. Accordingly, we vacate the district court's order granting Hoang's motion to dismiss and remand this case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

On April 10, 1995, a Maui grand jury returned a two-count indictment against Hoang, charging him with (1) promoting a detrimental drug in the second degree, in violation of HRS § 712–1248(1)(d) (Count One), *see supra* note 2, and (2) prohibited acts related to drug paraphernalia, in violation of HRS § 329–43.5(a) (1993) (Count

---

1. HRS § 712–1247 (1993) provides in relevant part:

 **Promoting a detrimental drug in the first degree.** (1) A person commits the offense of promoting a detrimental drug in the first degree if the person knowingly:

 . . . .

 (e) *Possesses* one or more preparations, compounds, mixtures, or *substances of an aggregate weight of one pound or more, containing any marijuana;* or

 (f) *Distributes* one or more preparations, compounds, mixtures, or *substances of a aggregate weight of one ounce or more, containing any marijuana;* or

 (g) *Possesses, cultivates,* or has under the person's control *twenty-five or more marijuana plants;* or

 (h) *Sells* or barters *any marijuana* or any Schedule v. substance *in any amount.*

 (2) Promoting a detrimental drug in the first degree is a class C felony.
 (Emphases added.)

 HRS § 712–1240 (1993) defines "[d]etrimental drug" to mean "any substance or immediate precursor defined or specified as a 'Schedule V substance' by chapter 329, or *any marijuana.*" (Emphasis added.) HRS § 712–1240 also defines "[t]o distribute" to mean "*to sell,* transfer, prescribe, give, or deliver to another, or to leave, *barter,* or exchange with another, or to offer or agree to do the same." (Emphases added.) Finally, HRS § 712–1240 defines "to sell" to mean "to transfer to another for consideration."

2. HRS § 712–1248 (1993) provides in relevant part:

 **Promoting a detrimental drug in the second degree.** (1) A person commits the offense of promoting a detrimental drug in the second degree if the person knowingly:

 . . . .

 (c) *Possesses* one or more preparations, compounds, mixtures, or *substances, of an aggregate weight of one ounce or more, containing any marijuana;* or

 (d) *Distributes any marijuana* or any Schedule v. substance *in any amount.*

 (2) Promoting a detrimental drug in the second degree is a misdemeanor.
 (Emphases added.)

Two). The indictment stemmed from an incident that occurred on January 6, 1995, during which—for $125.00—Hoang allegedly sold a film canister containing marijuana to an undercover police officer.

Hoang's trial was initially set to be heard in the second circuit court. However, on May 4, 1995, the prosecution filed a motion to dismiss Count Two of the indictment with prejudice, which the circuit court summarily granted. On the same day, the parties stipulated to remand the remaining charge, promoting a detrimental drug in the second degree (Count One), *see supra* note 2, to the district court. Count One charged:

> That on or about the 6th day of January, 1995, in the County of Maui, State of [Hawai'i], HAU VAN HOANG did knowingly distribute any marijuana or any Schedule V substance in any amount, to wit, marijuana, thereby committing the offense of Promoting a Detrimental Drug in the Second Degree in violation of Section 712–1248(1) of the [Hawai'i] Revised Statutes.

On August 11, 1995, Hoang moved to dismiss Count One, arguing that, because the charged crime, *i.e.,* the *sale* of marijuana in any amount as proscribed by the misdemeanor offense, *see supra* note 2, invariably and necessarily constituted a violation of the felony offense, *see supra* note 1, the prosecution was impermissibly granted the unfettered discretion to charge the identical conduct as a violation of either the felony or misdemeanor offense, thereby infringing his rights to due process and the equal protection of the laws as guaranteed by article I, section 5 of the Hawai'i Constitution [3] for the reasons articulated in *Modica.* Hoang amended his motion on September 15, 1995.

Hoang's motion was heard on August 6 and September 6, 1995 and, as amended, was further heard on September 20 1995. On September 20, 1995, the district court orally granted the amended motion. The court filed its written order dismissing Count One with prejudice on October 4, 1995 and, pursuant thereto, entered judgment in Hoang's favor on November 8, 1995.

Because the September 20, 1995 hearing was recorded on audiotape, much of which subsequently proved to be inaudible, the parties entered into a stipulated statement of the evidence, approved by the district court, which explained the basis of the district court's ruling. The stipulation provided in relevant part:

> ### STIPULATED STATEMENT OF THE EVIDENCE
>
> . . . .
>
> IT IS HEREBY STIPULATED AND AGREED, by and between the parties hereto, that the transcript of the record of the court's findings are as follows:
>
> . . . .
>
> 2. Notwithstanding the other legal arguments presented by defense counsel (that is, vagueness, equal protection of the laws, and acquiescence), the court granted [Hoang's] Motion to Dismiss on the basis of *State v. Modica* [,] 58 Haw. 249, 567 P.2d 420 (1977).
>
> 3. The decision to enter into this stipulated statement of the evidence is based solely upon the lack of a record at the hearing on [Hoang's] Motion to Dismiss. Neither the court's reliance upon *Modica* in dismissing this case nor this stipulated statement of the evidence by the parties is a waiver of [Hoang's] right to raise any applicable issue on appeal.
>
> 4. *The parties* also *agree that this case involved a sale of marijuana[.]*

(Some emphasis in original and some added.)

The prosecution appealed to this court.

## II. STANDARDS OF REVIEW

 The interpretation of a statute is a question of law reviewable *de novo. Konno v. County of Hawai'i,* 85 Hawai'i 61, 71, 937 P.2d 397, 407 (1997); *Furukawa v. Honolulu Zoological Society,* 85 Hawai'i 7, 12, 936 P.2d 643, 648, *reconsideration denied,* 85 Hawai'i 196, 940 P.2d 403 (1997); *State v. Cornelio,* 84 Hawai'i 476, 483, 935 P.2d 1021, 1028

---

3. Article I, section 5 of the Hawai'i Constitution (1978) provides in relevant part that "[n]o person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws[.]"

(1997); *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996). This court construes penal statutes narrowly, considering them in the light of precedent, legislative history, and common sense. *Cornelio*, 84 Hawai'i at 483, 935 P.2d at 1028; *State v. Vallesteros*, 84 Hawai'i 295, 302, 933 P.2d 632, 639, *reconsideration denied*, 84 Hawai'i 496, 936 P.2d 191 (1997); *State v. Kaakimaka*, 84 Hawai'i 280, 290, 933 P.2d 617, 627, *reconsideration denied*, 84 Hawai'i 496, 936 P.2d 191 (1997); *State v. Soto*, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997); *State v. Bates*, 84 Hawai'i 211, 220, 933 P.2d 48, 57 (1997); *State v. Gaylord*, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995).

■ Correlatively, we answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. *State v. Quitog*, 85 Hawai'i 128, 139, 938 P.2d 559, 570 (1997); *Soto*, 84 Hawai'i at 236, 933 P.2d at 73; *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853; *State v. Trainor*, 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996). Thus, we review questions of constitutional law under the "right/wrong" standard. *Quitog*, 85 Hawai'i at 139, 938 P.2d at 570; *Soto*, 84 Hawai'i at 236, 933 P.2d at 73; *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853.

■ Pursuant to the right/wrong standard, a conclusion of law is freely reviewable for its correctness. *Aickin v. Ocean View Inv. Co.*, 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997); *Soto*, 84 Hawai'i at 236, 933 P.2d at 73; *State v. Tuipuapua*, 83 Hawai'i 141, 145, 925 P.2d 311, 315 (1996).

## III. *DISCUSSION*

In its opening brief, the prosecution frames the question presented on appeal as whether it "[w]as ... vested with excessive discretion when it charged [Hoang] with violating a lesser[ ] misdemeanor drug statute, rather than a felony drug statute[,] for the sale of marijuana?" In his answering brief, Hoang poses the question as "[w]hether the trial court properly dismissed the charge of Promoting [a] Detrimental Drug in the [Second] Degree[,] where the prosecution had the unbridled discretion to charge either the misdemeanor offense or the felony offense for

the alleged sale of marijuana"? The answer to both questions is "no" for the identical reason: precisely *because* charging Hoang with the felony offense *would* have violated the *Modica* rule, (1) the prosecution pursued the only constitutionally permissible course available to it in charging Hoang with the misdemeanor offense, and (2) the district court therefore erred in dismissing Count One of the indictment. To understand why this is the case, it is necessary to consider the application of the *Modica* rule to the statutes at issue, within the broader context of HRS ch. 712, Part IV (entitled "Offenses related to drugs and intoxicating compounds"), of which HRS §§ 712–1247(1)(h) and –1248(1)(d) are component parts.

### A. *The "Modica Rule"*

■ In *Modica*, this court ruled that

[a] denial of [the] rights [to due process and the equal protection of the laws] would ... result ... if a violation of [a] misdemeanor statute ... would invariably and necessarily constitute a violation of [a] felony provision.... Thus, where the same act committed under the same circumstances is punishable either as a felony or as a misdemeanor, under either of two statutory provisions, and the elements of proof essential to either conviction are exactly the same, a conviction under the felony statute would constitute a violation of the defendant's rights to due process and the equal protection of the laws.

[*Modica*], [58 Haw. at] 250–51, 567 P.2d [at] 421–22 ... (citations omitted). The "*Modica* rule," which applies equally to the possibility of prosecution and conviction under two differentially classed felonies ..., was expressly reaffirmed in [*State v.*] *Kuuku*, 61 Haw. [79,] 80–81 [& n. 1], 595 P.2d [291,] 293 [& n. 1] [ (1979).]

*Arceo*, 84 Hawai'i at 22, 928 P.2d at 864 (quoting *State v. Aluli*, 78 Hawai'i 317, 324, 893 P.2d 168, 175 (1995) (Levinson, J., concurring) (some brackets and ellipsis points in original and some added)) (some brackets and ellipsis points in original and some added).

## B. The General Design Of The Hawai'i Drug Trafficking Statutes

In *State v. Mundell*, 8 Haw.App. 610, 822 P.2d 23, *cert. denied*, 72 Haw. 619, 841 P.2d 1075 (1991), the Intermediate Court of Appeals recognized that

> [o]ne purpose of [the penal statutes relating to drugs and intoxicating compounds] is to penalize drug law offenders according to the potential for abuse and social harm involved in their activities, hitting hardest at illegal traffickers (those who either "possess large quantities of dangerous . . . , harmful[,] or detrimental drugs or who distribute[ ] it in any amount"). Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1040; *see also* Commentary on HRS §§ 712–1241 to –1250. Thus, the legislature established a hierarchy of offenses based on the amount and kind of drugs possessed. *See* HRS §§ 712–1241 to –1250 (1985 & Supp.1990). This hierarchy indicates the legislature's determination of the possessor's position in the illegal drug stream. Larger amounts indicate the possessor is a main source of supply; lesser amounts indicate the possessor is a middle man between the main supply source and the consumer; the smallest amounts indicate the possessor is a consumer or user. Commentary to HRS §§ 712–1241 to –1250.

8 Haw.App. at 619–20, 822 P.2d at 28 (some brackets in original and some added).

In *Aluli*, this court construed "the design of our drug trafficking statutes" as follows:

> The drug trafficking statutes . . . make a clear distinction between *distributors (i.e., suppliers or sellers)* and possessors according to the amount of drugs possessed or dispensed. In explaining the rationale for treating possessors and distributors differently, the Commentary to HRS §§ 712–1241 to 1250 states:
>
>> It is the purpose of the Code to hit hardest at the illegal trafficker in dangerous drugs, harmful drugs, and detrimental drugs. The scheme devised for

so doing is to arrange the sanctions relating to each substance, either for possession or distributing, on the basis of the amounts involved. Such amounts are meant to reflect, i.e., provide an indicia of[,] the position of the defendant in the illegal drug traffic. . . . In keeping with [the] purpose of the Code, the greater the amounts involved the more severe the sanctions. . Also, it will be noted that the offenses of distributing a given substance are classed or graded one degree above the possession of the same amount. Thus, for example, in §§ 712–1241 and 1242, the possession of "wholesale" amounts of a dangerous drug is a class A felony; however, the defendant who distributes "retail" amounts of a dangerous drug will receive the same sanction, whereas possession of that amount is a class B felony. In equating, for purposes of classification and sanction, possession of a given amount of a substance with distributing a somewhat smaller amount, the [penal code] attempts to provide the same sanction for persons at the same level of involvement in the trafficking of a particular substance. For example, a "pusher" is likely to possess a larger supply of one or more of the specified substances which he would distribute on a given occasion; he will break down his supply into smaller marketable amounts before distributing.

Commentary to HRS §§ 712–1241 to 1250 (1985).

Treating a buyer as a distributor would blur the intended distinction between suppliers/distributors and possessors and would effectively nullify the legislature's construct that possessors of a given amount of a particular substance occupy the same position in the drug trade as distributors of a comparatively smaller amount. For instance, all of those possessors who bought their drugs could, at the discretion of the prosecutor, be charged with distribution.[4]

---

4. Thus, assuming, as the prosecution would have had us do in *Aluli,*

that "possesses" and "distributes" [were] fungible statutory terms, then [the defendant] could have been charged with and convicted of

*Aluli,* 78 Hawai'i at 321–22, 893 P.2d at 172–73 (emphasis added) (some brackets and ellipsis points added and some in original) (footnotes omitted).

Consistent with the foregoing, a number of patterns have emerged with respect to the drug trafficking statutes that govern the "promoting" of "dangerous," "harmful," and "detrimental" drugs, *i.e.,* HRS §§ 712–1241 to 712–1249. First, the higher the degree of danger that is perceived in a given drug, the more severe the sanction. Thus, for example, promoting a dangerous drug in the first degree and promoting a harmful drug in the first degree [5] are class A felonies, *see* HRS §§ 712–1241(2) and –1244(2) (1993), whereas promoting a detrimental drug in the first degree is a class C felony, *see* HRS § 712–1247(2) (1993), *supra* note 1.

Second, the greater the quantity of a given categorized drug that is merely "possessed" (as distinguished from "distributed," *see Aluli,* 78 Hawai'i at 321–22, 893 P.2d at 172–73), the more severe the sanction. Thus, for example, knowingly possessing one ounce or more of a "harmful" drug constitutes a form of promoting a harmful drug in the first degree, a class A felony, *see* HRS §§ 712–1244(1)(b) and (2) (1993), whereas knowingly possessing one-eighth ounce or more of the same drug constitutes a form of promoting a harmful drug in the second degree, a class B felony, *see* HRS §§ 712–1245(1)(b) and (2) (1993), and knowingly possessing the same drug "in any amount" constitutes promoting a harmful drug in the fourth degree, a misde-

meanor, *see* HRS §§ 712–1246.5(1) and (2) (1993).[6]

Third, the greater the quantity of a given categorized drug that is "distributed," *see* HRS § 712–1240 (1993), *supra* note 1, the more severe the sanction. For example, knowingly distributing one ounce or more of a "Schedule V substance" constitutes a form of promoting a detrimental drug in the first degree, a class C felony, *see* HRS §§ 712–1247(1)(d) and (2) (1993), whereas knowingly distributing any Schedule V substance in *any* amount constitutes a form of promoting a detrimental drug in the second degree, a misdemeanor, *see* HRS §§ 712–1248(1)(d) and (2) (1993), *supra* note 2.

Fourth, it has—from the inception of the Hawai'i Penal Code—been the intent of the legislature that the "[s]everest penalties" be "given to the person who distributes to a minor." *See* Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1040, Sen. Conf. Comm. Rep. No. 1–72, in 1972 Senate Journal, at 739.[7] Thus, knowingly distributing any dangerous drug in any amount to a minor constitutes a form of promoting a dangerous drug in the first degree, a class A felony, *see* HRS §§ 712–1241(1)(c) and (2) (1993), and knowingly distributing any harmful drug in any amount to a minor constitutes a form of promoting a harmful drug in the first degree, a class A felony, *see* HRS §§ 712–1244(1)(e) and (2) (1993).

It is with respect to the third and fourth of the foregoing patterns that the knowing dis-

---

either "distribut[ing] any dangerous drug in any amount" (Promoting a dangerous drug in the second degree), in violation of HRS § 712–1242(1)(c), or "possess[ing] any dangerous drug in any amount" (Promoting a dangerous drug in the third degree), in violation of HRS § 712–1243(1). Inasmuch as a violation of the latter would invariably and necessarily constitute a violation of the former, we would at long last have [had] a case to which the *Modica* rule would squarely apply.

*Aluli,* 78 Hawai'i at 324–25, 893 P.2d at 175–76 (Levinson, J., concurring) (some brackets added and some in original).

5. As originally enacted in 1972, promoting a harmful drug in the first degree was a class B felony. *See* 1972 Haw. Sess. L. Act 9, § 1 at 135. Effective May 22, 1975, the legislature elevated the offense to a class A felony. *See* 1975 Haw. Sess. L. Act 119, § 1 at 232.

6. Until June 7, 1989, knowingly possessing a harmful drug in any amount constituted promoting a harmful drug in the *third* degree in violation of HRS § 712–1246(1). *See* 1989 Haw. Sess. L. Act 163, §§ 5 and 6 at 304. Effective on that date, however, promoting a harmful drug in the third degree was elevated to a class C felony and is committed by knowingly possessing "twenty-five or more capsules or tablets or dosage units" containing such a drug. *See id.,* § 5 at 304.

7. More accurately, the original intent of the legislature was that the "[s]everest penalties" were to be given "to the person who distributes to a minor *who is at least three years his junior.*" (Emphasis added.) *See infra* section III.C.

tribution of marijuana, in violation of HRS §§ 712–1247 and –1248, *see supra* notes 1 and 2, presents an anomaly, and therein lies the source of the problem that has generated this appeal. To fully appreciate the anomaly, however, it is necessary to trace the development of these two statutes, which we will do in the next section of this opinion.

### C. *The Meandering Evolution Of HRS §§ 712–1247 and –1248*

#### 1. *The original construct*

The legislature first adopted the drug trafficking statutes, as presently organized, in conjunction with the promulgation of the Hawai'i Penal Code in 1972. *See* 1972 Haw. Sess. L. Act 9 [hereinafter, Act 9], §§ 1–3 at 32–142. In their initial form, the sections relating to promoting "detrimental" drugs by "distribution"—HRS §§ 712–1247 and 712–1248 (Supp.1972)—provided in relevant part:

§ 712–1247 **Promoting a detrimental drug in the first degree.** (1) A person commits the offense of promoting a detrimental drug in the first degree if he knowingly and unlawfully:[8]

. . . .

(d) *Distributes* one or more preparations, compounds, mixtures, or substances, of *an aggregate weight of [one-eighth] ounce or more, containing one or more of the Schedule V substances;* or

. . . .

(f) *Distributes* one or more preparations, compounds, mixtures, or substances of *an aggregate weight of 2 ounces or more, containing any marijuana;* or

(g) *Distributes any marijuana* or any Schedule v. substance *in any*

*amount to a minor* who is at least three years his junior.

(2) Promoting a detrimental drug in the first degree is a class C felony.

§ 712–1248 **Promoting a detrimental drug in the second degree.** (1) A person commits the offense of promoting a detrimental drug in the second degree if he knowingly and unlawfully:

. . . .

(d) *Sells* any marijuana or *distributes* any Schedule v. substance *in any amount.*

(2) Promoting a detrimental drug in the second degree is a misdemeanor.

Act 9, § 1 at 136 (emphases added).

Thus, with one notable exception, the foregoing statutory scheme governing "detrimental" drugs, as originally enacted, exhibited the same patterns regarding "distribution"—discussed *supra* in section III.B—as did the statutes governing "dangerous" and "harmful" drugs. First, consonant with the legislative policy that the "severest penalties" should be applied to "person[s] who distribute[] to a minor who is at least three years [their] junior," *see* Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1040; Sen. Conf. Comm. Rep. No. 1–72, in 1972 Senate Journal, at 739, section 1247(1)(g) made it a "first degree" offense to "[d]istribute[] any marijuana or any Schedule V substance in any amount to a minor who is at least three years [the defendant's] junior." In this respect, section 1247(1)(g) mirrored section 1241(1)(c) regarding "dangerous" drugs and section 1244(1)(e) regarding "harmful" drugs. *See* Act 9, § 1 at 134–35.

Second, sections 1247(1)(d) and (f) made it a "first degree" offense to distribute "retail" amounts of Schedule V substances and marijuana (*i.e.*, "detrimental" drugs, *see* HRS § 712–1240, *supra* note 1), respectively,

---

8. In 1975, as part of a global revision, the drug trafficking statutes were amended to delete the phrase "and unlawfully." *See* 1975 Haw. Sess. L. Act 163, § 6 at 356–59.

Every offense of promoting drugs [had previously been] defined as "knowingly" and "unlawfully" possessing or distributing certain drugs and compounds. Such definition ma[de] the "unlawfulness" of the defendant's conduct an element of the crime which must

be proven by the prosecution. . . . The word "unlawfully" has been deleted from the description of every offense in Part IV, Chapter 12 of the Penal Code. The result is that the elements of the offense of promoting will be (1) to knowingly (2) distribute or possess (3) the dangerous, harmful[,] or detrimental drugs. . . .

Sen. Stand. Comm. Rep. No. 590, in 1975 Senate Journal, at 1057–58.

whereas section 1248(1)(d) made it a "second degree" offense to distribute "any Schedule V substance in any amount." In this respect, these sections mirrored sections 1241(1)(b)(ii) and 1242(1)(c) regarding "dangerous" drugs and sections 1244(1)(d) and 1245(1)(c) regarding "harmful" drugs. *See* Act 9, § 1 at 134–35.

The aforementioned "notable exception" is the portion of section 1248(1)(d) that made it a "second degree" offense to "*sell*[ ] any marijuana ... in any amount." (Emphasis added.) In that respect, HRS § 712–1248(1)(d) (1972) was the *only* section within the original statutory scheme governing the promotion of dangerous, harmful, and detrimental drugs to single out "sale"—as it pertained to marijuana—as the sole culpable form of "distribution." *See* HRS § 712–1240, *supra* note 1. Such being the case, if a person "distributed" marijuana to an adult in an amount *less than* two ounces, *see* HRS § 712–1247(1)(f), but the mode of distribution was *not* by "selling," then it was *not* criminally proscribed "distribution" of a detrimental drug.

The legislature's original intent in limiting the prohibited "distribution" of small quantities of marijuana to "sales" is explained by the contemporaneous legislative history, as reflected in the report of the legislative conference committee that hammered out the new Hawai'i Penal Code:

> One area on which the Committee spent a considerable period of study was the disposition of marijuana. Your Committee finds the present sanctions in Hawaii are inconsistent with the philosophy of this Code to penalize according to the degree of social harm. Your Committee finds there is good reason to moderate present punitive statutes so that penalties are more in keeping with what is now known about the potential for abuse and social harm involved.

Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1040; Sen. Conf. Comm. Rep. No. 1–72, in 1972 Senate Journal, at 739.

In any event, it is apparent that, as originally enacted in 1972, HRS §§ 712–1247 and –1248 created no *Modica* problem as they pertained to the distribution of marijuana, by sale or otherwise. Either the *distribution of "2 ounces or more" of marijuana to anyone* or of *"any amount" to a minor* (who was at least three years younger than the defendant) gave rise to the felony offense, while the misdemeanor offense could only be committed by the *sale of marijuana in any amount to an adult.* Other than the fact that the offense of *selling* marijuana in any amount to an adult was obviously "included in" the offense of *distributing* two ounces or more of marijuana to anyone, within the meaning of HRS §§ 701–109(1)(a) and (4) (1993), *see e.g., State v. Wallace,* 80 Hawai'i 382, 415 & nn. 32–33, 910 P.2d 695, 728 & nn. 32–33 (1996), the twain simply did not meet.

### 2. *Subsequent material revisions*

In 1981, the legislature determined that it would be desirable

> to remove the protection given to those less than three years older than the minor to whom they distribute dangerous, harmful, or detrimental drugs. Present law ... reflects prior legislative intent to protect a distributor of drugs in the same age group, albeit slightly older than the person to whom the drugs were distributed.
>
> ... [T]he existing protection given to persons less than three years older than the minor to whom the drug is distributed[ ] has resulted in wholesalers of drugs using young persons as "pushers" to distribute to minors, ... thereby avoiding [more severe] felony sanctions.... [T]his exemption should be removed[ ] in order to remove the incentive to recruit young persons as "pushers".

Sen. Stand. Comm. Rep. No. 403, in 1981 Senate Journal, at 1090; *see also* Hse. Stand. Comm. Rep. No. 944, in 1981 House Journal, at 1335–56. Accordingly, the legislature deleted the "protection" from HRS §§ 712–1241(1)(c), –1244(1)(e), and –1247(1)(g). *See* 1981 Haw. Sess. L. Act 31, §§ 1–3 at 51–52. Having done so, HRS § 712–1247(1) now provided in relevant part:

> (1) A person commits the offense of promoting a detrimental drug in the first degree if he knowingly:

. . . .

 (g) Distributes any marijuana or any Schedule V substance in any amount to a minor.

HRS § 712–1247 (Supp.1981).

In 1986, the legislature enacted "an omnibus bill, Act 314, by which [it] revisited the fundamental philosophy reflected in the [Hawai'i Penal Code] following a process of comprehensive review." *Gaylord,* 78 Hawai'i at 149, 890 P.2d at 1189; *see* 1986 Haw. Sess. L. Act 314 [hereinafter, Act 314], §§ 1–80 at 593–629. For present purposes, Act 314 is significant in two respects. First, because a subsection (the provisions of which are immaterial to this appeal) was added to section 1247(1) of the Hawai'i Penal Code, HRS § 712–1247(1)(g) was renumbered to its current designation—HRS § 712–1247(1)(h). Act 314, § 75 at 628. Second, Act 314 added a new section to HRS ch. 712—HRS § 712–1249.5 (Supp.1986), entitled "Commercial promotion of marijuana." *Id.,* § 76 at 628. HRS § 712–1249.5 would become relevant to the present analysis three years later.

In 1989, the legislature undertook "to stiffen the penalties for the promotion of marijuana and similar substances in furtherance of the war against drugs." Sen. Conf. Comm. Rep. No. 164, in 1989 Senate Journal, at 837; Hse. Conf. Comm. Rep. No. 146, in 1989 House Journal, at 829; Sen. Stand. Comm. Rep. No. 896, in 1989 Senate Journal, at 1145. As initially recommended by the Senate Judiciary Committee, S.B. No. 1154 established, *inter alia,* "the offense of first degree promotion of marijuana[,] . . . a class A felony," [9] which included the distribution of "any marijuana or any Schedule V substance in any amount to a minor," formerly located in HRS § 712–1247(1)(h). *See* Sen. Stand. Comm. Rep. No. 896, in 1989 Senate Journal, at 1145; Hse. Stand. Comm. Rep. No. 1272,

in 1989 House Journal, at 1312. Thus, by transporting "distribution of marijuana or a Schedule V substance in any amount to a minor" out of HRS § 712–1247(1)(h) and into a new section, the Hawai'i Penal Code's statutory scheme governing the promotion of "detrimental" drugs no longer expressly addressed the issue. The bill also amended HRS § 712–1248(1)(d) to provide that "distribution," in any of its forms, *see* HRS § 712–1240, *supra* note 1, rather than mere "sale," *see id.,* of marijuana in any amount would constitute second degree promotion of a detrimental drug. Sen. Stand. Comm. Rep. No. 896, in 1989 Senate Journal, at 1145.

When S.B. No. 1154 crossed over to the House of Representatives, the House Judiciary Committee, *inter alia,* "amended [the] measure by deleting from Section 1 of the bill," which created the class .A marijuana felony, *see supra* note 9—the subsection "pertaining to the distribution of drugs to minors," Hse. Stand. Comm. Rep. No. 1272, in 1989 House Journal, at 1313—, and transferred the provision to the .amended version of HRS § 712–1249.5, *see supra* note 9.[10]

Because the Senate and House drafts of S.B. No. 1154 now differed, the measure was sent to a joint conference committee for final resolution. With the sole explanation that it had done so "in an attempt to balance the efforts of law enforcement in fighting the drug problem against the need to provide fair and equitable punishment," the conference committee reported in relevant part that

 [y]our Committee has made the following amendments to the bill:

 To specify that *promoting a detrimental drug in the first degree is committed when one sells or barters any marijuana* or any Schedule V substance;

9. This provision was ultimately enacted as HRS § 712–1249.4 (Supp.1989), entitled "Commercial promotion of marijuana in the first degree." HRS § 712–1249.5, as amended, was redesignated "Commercial promotion of marijuana in the second degree."

10. Thus, in its present form, the statute provides in relevant part:

 **Commercial promotion of marijuana in the second degree.** (1) A person commits the of-

fense of commercial promotion of marijuana in the second degree if the person knowingly:

 . . .

 (e) Sells or barters any marijuana or any Schedule V substance in any amount to a minor.

 (2) Commercial promotion of marijuana in the second degree is a class B felony.

HRS § 712–1249.5 (1993).

. . . .

To define the offense of promoting a detrimental drug in the second degree as *the distribution of any marijuana* or any Schedule v. substance *in any amount*; and

To specify that *commercial promotion of marijuana in the second degree is committed* [, *inter alia*,] *when[ ] one ... sells or barters any marijuana* or any Schedule v. substances *in any amount to a minor.*

Sen. Conf. Comm. Rep. No. 164, in 1989 Senate Journal, at 837 (emphases added); Hse. Conf. Comm. Rep. No. 146, in 1989 House Journal, at 829 (emphases added).

S.B. No. 1154 was enacted into law as Act 384 and was approved by the governor on June 27, 1989, effective immediately. Pursuant to the act, HRS § 712–1247 now provided in relevant part:

**Promoting a detrimental drug in the first degree.** (1) A person commits the offense of promoting a detrimental drug in the first degree if [he] the person knowingly:

. . . .

(f) Distributes one or more preparations, compounds, mixtures, or substances of an aggregate weight of [two ounces] one ounce or more, containing any marijuana; or

. . . .

(h) [Distributes] Sells or barters any marijuana or any Schedule V substance in any amount. [to a minor.]

(2) Promoting a detrimental drug in the first degree is a class C felony.

1989 Haw. Sess. L. Act 384, § 2 at 1100 (repealed material in brackets and new statutory material underscored). HRS § 712–1248, in turn, now provided in relevant part:

**Promoting a detrimental drug in the second degree.** (1) A person commits the offense of promoting a detrimental drug in the second degree if [he] the person knowingly:

. . . .

(d) [Sells] Distributes any marijuana or [distributes] any Schedule V substance in any amount.

(2) Promoting a detrimental drug in the second degree is a misdemeanor.

1989 Haw. Sess. L. Act 384, § 3 at 1100 (repealed material in brackets and new statutory material underscored). Finally, a mongrelized version of the former HRS §§ 712–1247(1)(h) and –1248(1)(d) was transported out of the statutes governing the promotion of "detrimental" drugs and engrafted onto HRS § 712–1249.5, in relevant part, as follows:

**Commercial promotion of marijuana[.] in the second degree.** (1) A person commits the offense of commercial promotion of marijuana in the second degree if the person knowingly:

. . . .

(e) [Uses, or causes to be used, any firearm or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner used is capable of causing death or serious bodily injury, substantial bodily injury, or other bodily injury as defined in chapter 707 in order to prevent the theft, removal, search and seizure, or destruction of marijuana.] Sells or barters any marijuana or any Schedule V substance in any amount to a minor.

(2) Commercial promotion of marijuana in the second degree is a class B felony.

1989 Haw. Sess. L. Act 384, § 4 at 1101 (repealed material in brackets and new statutory material underscored).

Thus it was, by virtue of seventeen years of legislative amendment, that HRS §§ 712–1247(1)(h) and –1248(1)(d) (Supp.1989) had been fundamentally transformed—both substantively and schematically—from their 1972 origins.

D. *HRS §§ 712–1247(1)(h) And –1248(1)(d) And The "Modica Rule"*

■ We now directly address the initial question posed at the outset of this opinion:

Where the parties stipulate—and it is therefore undisputed—that a defendant's alleged "distribution" of marijuana has taken place by way of a "sale" to a third party, does the statutory scheme set forth in HRS §§ 712–1247(1)(h), *see supra* note 1, and –1248(1)(d), *see supra* note 2, violate the "*Modica* rule," *see supra* section III.A? Our analysis, at this point, necessarily begins with a consideration of the elements of the respective offenses.

HRS § 701–114(1)(a) and (b) (1993) requires proof beyond a reasonable doubt of each element of the offense, as well as the state of mind required to establish each element of the offense. Moreover, HRS § 702–204 (1993) provides in relevant part that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies with respect to each element of the offense." ... HRS § 702–207 (1993) provides that "[when] the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears." In addition, pursuant to HRS § 702–205 ..., the requisite state of mind applies to such conduct, attendant circumstances, and results of conduct as are specified by the definition of the offense. *Arceo*, 84 Hawai'i at 14, 928 P.2d at 856 (quoting *Wallace*, 80 Hawai'i at 412, 910 P.2d at 725 (quoting *State v. Holbron*, 80 Hawai'i 27, 39, 904 P.2d 912, 924, *reconsideration denied*, 80 Hawai'i 187, 907 P.2d 773 (1995)) (some ellipsis points added and some in original) (brackets in original)).

A person commits the offense of promoting a detrimental drug in the first degree, in violation of HRS § 712–1247(1)(h), *i.e.*, the felony offense, if the person knowingly sells or barters any marijuana or any Schedule V substance in any amount.

Accordingly, had Count One of the indictment charged Hoang with a violation of the felony offense, and in light of the parties' stipulation, there would have been two material elements of the offense of promoting a detrimental drug in the first degree, each of which the prosecution would have been required to prove beyond a reasonable doubt in order to establish guilt. These two elements would have been: (1) that Hoang sold marijuana (*i.e.*, the prohibited conduct) in any amount (*i.e.*, the attendant circumstance of the requisite quantity); and (2) that Hoang did so knowingly (*i.e.*, the requisite state of mind).

A person commits the offense of promoting a detrimental drug in the second degree, in violation of HRS § 712–1248(1)(d), *i.e.*, the misdemeanor offense, if the person knowingly distributes any marijuana or any Schedule V substance in any amount.

Accordingly, in light of the parties' stipulation, there were two material elements of the misdemeanor offense of promoting a detrimental drug in the second degree as charged in Count One of the indictment against Hoang, each of which the prosecution was required to prove beyond a reasonable doubt in order to establish guilt. These two elements were: (1) that Hoang distributed, *see* HRS § 712–1240, *supra* note 1, marijuana by "selling," *see id.*, it (*i.e.*, the prohibited conduct) in any amount (*i.e.*, the attendant circumstance of the requisite quantity); and (2) that Hoang did so knowingly (*i.e.*, the requisite state of mind).

Under the circumstances presented in this appeal, we hold that the interrelationship between HRS §§ 712–1247(1)(h) and –1248(1)(d) "generate[s] the very evils rendered unlawful by the *Modica* rule." *See Arceo*, 84 Hawai'i at 22, 928 P.2d at 864. First, a violation of the misdemeanor offense invariably and necessarily constitutes a violation of the felony offense. Second, and correlatively, "the same act committed under the same circumstances is," by virtue of the prosecution's charging option or whim, "punishable either as a felony or as a misdemeanor, under either of [the] two statutory provisions," precisely because "the elements of proof essential to either conviction are exactly the same." *See id.* (quoting *Modica*, 58 Haw. at 251, 567 P.2d at 422). That being the case, we further hold that a conviction of the felony offense "would constitute a violation of [Hoang's] rights to due process and the equal protection of the laws." *See id.*

### E. *The "Modica Rule" Was Not Violated In This Case.*

 Hoang, however, could not have been convicted of the felony offense because he was not charged with it. Thus, we reach the final question raised in this appeal: Can a defendant who is charged with violating the misdemeanor offense, *see supra* note 2, rather than the felony offense, *see supra* note 1, successfully claim a denial of his or her rights to due process and the equal protection of the laws, thereby benefitting from the *Modica* rule? In this context, we note that " '[r]ights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect.' " *In re Tax Appeal of Hawaiian Flour Mills, Inc.,* 76 Hawai'i 1, 10, 868 P.2d 419, 428 (1994) (quoting *Carey v. Piphus,* 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978)). Thus, "[a] person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally to others.' " *Gaylord,* 78 Hawai'i at 142, 890 P.2d at 1182 (quoting *State v. Kaneakua,* 61 Haw. 136, 144, 597 P.2d 590, 594 (1979)) (brackets in original).

This appeal does not raise the specter of the sort of prosecutorial abuse against which the *Modica* rule was intended to protect. Because Hoang was charged with the misdemeanor offense and not the felony offense, he was not threatened with unbridled, capricious, and prejudicial prosecutorial discretion. Thus, his rights to due process and the equal protection of the laws, as described in *Modica,* could not have been violated. We therefore hold that, because he was not prejudicially charged with the felony offense, Hoang cannot benefit from the *Modica* rule, and the district court erred in granting Hoang's amended motion to dismiss Count One of the indictment.

## IV. *CONCLUSION*

For the foregoing reasons, we vacate the district court's order granting Hoang's motion to dismiss and remand this case to the district court for further proceedings consistent with this opinion.